A jury awarded $135,000 to Jeff Burns, a pedestrian involved in a collision with a motor vehicle driven by Rena S. Campbell, for personal injuries sustained in the motor vehicle-pedestrian collision. The case went to the jury with instructions on negligence, contributory negligence, and subsequent negligence. Ms. Campbell appeals. We affirm.
The two issues presented for review are:
1) Was there any evidence requiring an instruction on subsequent negligence?
2) Does the evidence clearly indicate that the jury verdict was wrong and unjust?
Subsequent negligence can be the basis of a recovery under a count charging simple negligence. However, there must be some evidence requiring an instruction on subsequent negligence.Owen v. McDonald, 291 Ala. 572, 285 So.2d 79 (1973).
 "The elements of subsequent negligence are: (1) that the plaintiff was in a perilous position, (2) of which the defendant had actual knowledge, (3) that armed with such knowledge the defendant failed to use reasonable and ordinary care in avoiding the accident, (4) that the use of reasonable and ordinary care would have avoided the accident, and (5) that the plaintiff was injured as a result."
Treadway v. Brantley, 437 So.2d 93, 97 (Ala. 1983).
The trial court gave Alabama Pattern Jury Instruction 28.07 ("Subsequent Negligence"), which is a correct statement of the law of subsequent negligence. This was timely objected to by defendant Campbell on the grounds that there was no evidence that she had actual knowledge that the plaintiff was in a position of danger; that there was no evidence that she had failed to use reasonable and ordinary care; that there was no evidence that she could have avoided the accident if she had used reasonable and ordinary care; that this was an emergency so sudden that there was no time to avoid the accident; and that the charge was not supported by the facts of the case.
The scintilla rule is the standard of evidence review that this Court must apply. Allstate Enterprises, Inc. v. Alexander,484 So.2d 375 (Ala. 1985).
Is there any evidence, or are there any logical inferences that can be drawn from the evidence, that Ms. Campbell had actual knowledge that Burns was in a position of peril? Reviewing the tendencies of the evidence most favorably to the prevailing party, as we are required to do, Mid-Continent *Page 1343 Refrigerator Co. v. Fulton Grocery, Inc., 503 So.2d 1222
(Ala. 1987), we conclude that there was.
There was evidence that Ms. Campbell saw Burns as he exited the door of the Drift In Lounge and had him in sight until the collision occurred; Burns "was walking slowly" and "wasn't moving real fast"; Ms. Campbell's automobile was 300 feet from Burns when Burns walked out in front of her. There is a scintilla of evidence that Ms. Campbell had actual knowledge that Burns was in a position of peril.
Is there any evidence that Ms. Campbell failed to use reasonable and ordinary care in avoiding the accident? Reviewing the tendencies of the evidence most favorably to Burns, we find there was. According to one witness, Ms. Campbell's car did not slow down at any time before the collision. Ms. Campbell testified that after she saw Burns she took her "foot off the gas." She knew that Burns was coming toward the street she was driving in. She did not sound her horn. She did not know how far she traveled with her foot off the accelerator pedal before she applied her brakes. Her vehicle hit Burns forcefully enough to knock him 50 to 70 feet, to break his leg, his pelvic bone, his shoulder in three places, his wrist, his fingers, and his ankle. There is a scintilla of evidence that Ms. Campbell failed to use reasonable and ordinary care to avoid the accident.
Is there any evidence that Ms. Campbell could have avoided the accident if she had used reasonable and ordinary care, or was this an emergency so sudden that there was not enough time for her to avoid the accident?
In Norwood Transportation Co. v. Bickell, 207 Ala. 232,92 So. 464 (1922), we wrote:
 "It is true that the doctrine of subsequent negligence on the part of either plaintiff or defendant is not to be applied in a case where the manifestation of peril and the catastrophe are so close in point of time as to leave no room for preventive effort."
207 Ala. at 234, 92 So. at 466. See also, Owen v. McDonald,291 Ala. 572, 285 So.2d 79 (1973); and Johnson v. Coker, 281 Ala. 14, 198 So.2d 299 (1967).
Photographs of the accident scene were introduced. Testimony was given by witnesses as to the relative locations of Burns and of Ms. Campbell's vehicle from the time Burns left the Drift In Lounge until the collision. There was evidence that Ms. Campbell was 300 feet from Burns when he first stepped into the street. Clearly, Ms. Campbell did not immediately apply her brakes or sound her horn or attempt to turn her car to the right or left. By her lowest estimate she was going 20 M.P.H. when she removed her foot from the accelerator. From the evidence, the jury could infer that Ms. Campbell could have avoided the accident if she had used reasonable and ordinary care.
From the foregoing discussion, it is evident that the subsequent negligence charge was supported by the evidence. There is no merit in the first issue presented for review.
Does the evidence clearly indicate that the jury verdict was wrong and unjust? We are persuaded that it does not.
Upon review of a jury verdict, we presume that the verdict was correct; we review the tendencies of the evidence most favorably to the prevailing party; and we indulge such reasonable inferences as the jury was free to draw from the evidence. We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust. Mid-Continent Refrigerator Co. v. Fulton Grocery, Inc.,supra.
Certainly, there was ample evidence for a jury to find initial legal liability on the part of Ms. Campbell and contributory negligence on the part of Burns. There was evidence that Ms. Campbell was driving on the city streets of Birmingham at night without her headlights on. There was also evidence from which the jury could infer that Ms. Campbell was driving without wearing her glasses, which were required *Page 1344 
for driving. Burns was crossing a roadway at a point at which he was required by law to yield the right-of-way to all vehicles upon the roadway. By his own admission, Burns had been drinking alcoholic beverages. His blood alcohol level was .298%, and "[t]he average individual at this alcohol level would be in a confused and dazed state due to the effects of alcohol taking away his ability to react with his environment and reason and think and recall from memory, and he would exhibit signs of slurred speech, motor impairment, staggering-type gait."[1]
There was sufficient evidence for the subsequent negligence issue to go to the jury. As an appellate court, we have neither the right nor the inclination to say whether we would have decided this case differently. The facts are to be determined by the jury and not by us. The evidence against the verdict is not so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust.
AFFIRMED.
MADDOX, ALMON, BEATTY and ADAMS, JJ., concur.
[1] From the trial testimony of forensic toxicologist, H. Chip Walls.